IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER GLOEGE,

                Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.[1]

OPINION and ORDER

19-cv-250-jdp

---

Plaintiff Christopher Gloege seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Gloege not disabled within the meaning of the Social Security Act. Gloege says that administrative law judge (ALJ) Joseph D. Jacobson erred by (1) improperly accounting for Gloege's mental limitations in determining his residual functional capacity (RFC); and (2) improperly weighing opinion evidence from Gloege's treating and examining sources. The case is scheduled for oral argument on November 15, 2019, but oral argument is unnecessary. The ALJ didn't err in weighing opinion evidence, but Gloege's first ground warrants remand.

ANALYSIS

Gloege filed his initial application for supplemental security income on August 15, 2012, alleging that he had been disabled since August 1, 2000. After a hearing, an ALJ found Gloege ineligible for benefits in 2014, but the agency Appeals Council remanded his case to

---

[1] The court has changed the caption to reflect that Andrew Saul was confirmed as the Commissioner of Social Security after Gloege filed this lawsuit.

another ALJ later that year. That ALJ found Gloege ineligible for benefits in a 2015 decision, which Gloege challenged in this court. The decision was remanded on a stipulated motion from the parties. *See Gloege v. Berryhill*, No. 3:17-cv-324, Dkt. 16 (W.D. Wis. Sept. 25, 2017). The Appeals Council then remanded the case to ALJ Jacobson, who held a hearing in 2018. Gloege now says that he has been disabled since August 15, 2012, the date he filed his initial application.

In a lengthy and generally thorough opinion, the ALJ determined that Gloege suffers from the severe impairments of anxiety disorder, posttraumatic stress disorder, depression, and personality disorder, as well as physical impairments not at issue. R. 692.[2] Assessing the overall severity of Gloege's mental limitations, he rated Gloege as having moderate limitations in the category of concentration, persistence, and pace. R. 702. He discounted Gloege's subjective reports and testimony regarding his mental limitations because of their significant inconsistency with his medical record evidence. He found that Gloege retained the ability to perform medium work, with some additional limitations. These included mental limitations providing that Gloege could "understand simple instructions in a low stress job, defined as a job requiring only occasional decision-making or the adaptation to only occasional changes in the work setting" and could "work in an environment that does not involve piecework[,] . . . fast-moving assembly line-type work, [or] more than occasional interaction with coworkers, and requires no interaction with the public." R. 705.

At Gloege's hearing, the ALJ asked a vocational expert whether an individual with these limitations could perform any jobs available in the national economy. The vocational expert

---

[2] Record cites are to the administrative transcript, located at Dkt. 8.

said that such an individual could work as a packer, food preparation worker, kitchen helper, sorter, assembler, or packager. The ALJ adopted the expert's testimony in his decision.

Gloege says that this RFC doesn't account for his concentration, persistence, and pace limitations and that the ALJ failed to give the proper weight to medical opinions from sources who had treated or examined Gloege. In considering these challenges to the ALJ's decision to deny benefits to Gloege, the court must "determine whether [the ALJ's decision] applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017).

**A. Gloege's concentration, persistence, and pace limitations**

Gloege says that the ALJ didn't adequately account for Gloege's mental limitations in his RFC and that this makes the vocational expert's opinion unreliable. Both an ALJ's RFC and his hypothetical question posed to a vocational expert (which is based on that RFC) must incorporate any limitations supported by the claimant's medical record, including specifically identified limitations to concentration, persistence, or pace. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019) (per curiam).

Gloege raises several challenges to the ALJ's RFC and hypothetical question based on his limitations to concentration, persistence, and pace. He contends that (1) the ALJ failed to explain how restricting Gloege from fast-paced production work accounted for his moderate limitations in concentration, persistence, and pace; (2) restricting Gloege from fast-paced production work inadequately addressed his moderate limitations in concentration, persistence, and pace; (3) the ALJ should have either referred to Gloege's "moderate limitations in concentration, persistence, and pace" or used equivalent language in questioning the vocational expert; and (4) the ALJ's RFC and hypothetical question didn't adequately account

3

for specific limitations in the area of concentration, persistence, and pace identified by an agency consultant.

Gloege's first three arguments really boil down to one—that because the ALJ rated Gloege as having moderate limitations in concentration, persistence, and pace, the ALJ should have specifically addressed that rating in his RFC and in his hypothetical question. But this is incorrect. An ALJ evaluates a claimant's eligibility for benefits under a five-step process. 20 C.F.R. § 404.1520. At step three, the ALJ will rate the overall severity of the claimant's mental impairments in "four broad functional areas," one of which is the claimant's ability to "concentrate, persist, or maintain pace," on a five-point scale from "none" to "extreme." 20 C.F.R. §§ 404.1520a(c)(3), (4). Such a rating is a generalized assessment of the claimant's overall abilities in a broad area, not a specific impairment that must be addressed in the RFC. As this court has explained before, rating a claimant as having "moderate limitations in concentration, persistence, and pace" only places the claimant into a general category. *Rabitoy v. Berryhill*, No. 17-cv-495, 2018 WL 1010219, at *2 (W.D. Wis. Feb. 21, 2018). "[T]he question is whether the [RFC] includes all of the claimant's limitations supported by the record." *Id.*

The court of appeals recently clarified this issue in *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). In that case, the plaintiff, like Gloege, said that his RFC didn't adequately account for the ALJ's finding that he suffered from moderate limitations in concentration, persistence, and pace. Jozefyk said that an RFC confining him to routine tasks and limited interactions with others was inconsistent per se with this rating. But the court upheld the commissioner's decision because the RFC "adequately account[ed] for the claimant's demonstrated

psychological symptoms" and because Josefyk hadn't cited any evidence that his specific limitations would prevent him from performing work under the terms of his RFC. *Id.* at 498.

Following the guidance in *Jozefyk*, Gloege's first three arguments can only succeed if he identifies evidence in the record showing that the RFC doesn't account for his specific mental limitations. He doesn't explicitly identify any such evidence to support his first three arguments. But in his fourth argument, he points to findings by Esther Lefevre, a reviewing consultant. She found that Gloege had moderate limitations in his ability to "carry out detailed instructions," "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "work in coordination with or in proximity to others without being distracted by them," and "complete a normal workday and workweek without interruptions from psychologically based symptoms and . . . perform at a consistent pace without an unreasonable number and length of rest periods." R. 133.

Gloege contends that the ALJ didn't account for Lefevre's limitations in his RFC—specifically, that his restriction of Gloege to "fast-paced production" was too vague to address Lefevre's specific findings. The commissioner responds that the ALJ's RFC was more restrictive than the restrictions suggested by Lefevre in the narrative portion of her report, which stated that Gloege was "capable of performing routine, unskilled work with no exposure to the general public," R. 134. But even though an ALJ can rely on a doctor's narrative findings, he "still must adequately account for limitations identified elsewhere in the record" in determining a claimant's RFC, including other limitations identified in the doctor's report. *DeCamp*, 916 F.3d at 676. The ALJ's RFC doesn't account for the limitations Lefevre identified regarding attendance, punctuality, and ability to complete a normal workday and workweek without

interruption, and the ALJ doesn't say whether or how he considered Lefevre's findings in these areas.

The commissioner also says that the ALJ supported his decision to discount Lefevre's assessment, which he noted was "quite remote" and was made under outdated assessment criteria, R. 697. But the ALJ gave Lefevre's assessment different weight at different places in his opinion without explaining this inconsistency. He gave it only some weight in determining how much Gloege could interact with coworkers and the general public. R. 714. But he gave it great weight in determining that Gloege suffered from moderate limitations in concentration, persistence, and pace. R. 702. This unexplained inconsistent treatment of Lefevre's opinion doesn't support the ALJ's decision to discount her findings.

The ALJ should have either accounted for the limitations identified by Lefevre in his RFC and hypothetical question or adequately explained his decision to discount them. Because he did neither, the vocational expert's testimony wasn't reliable and the ALJ wasn't justified in relying on it. *DeCamp*, 691 F.3d at 676. On remand, the ALJ will need to engage with Lefevre's specific findings in determining Gloege's RFC.

**B. Treating and examining source opinions regarding work stress**

Gloege also says that the ALJ erred in determining how much weight to give to the opinions of two physicians: William Bucknam, who treated Gloege, and Kurt Weber, who examined him. Regulations in effect when Gloege filed his application for benefits provided that, if all other considerations were equal, treating sources should receive the greatest weight, followed by examining sources, then followed by nonexamining sources. 20 C.F.R. § 404.1527(c). The ALJ should explain any deviations from this hierarchy. *Id.* Gloege says that

6

these regulations required the ALJ to give greater weight to Bucknam and Weber's opinions that Gloege would have problems dealing with work stress.

### 1. Bucknam's opinions

The ALJ gave no weight to the opinion of Buckman, who opined that Gloege would be unable to meet competitive standards regarding his ability to deal with normal work stress, R. 473, R. 561. The ALJ discounted Bucknam's opinions for two reasons. First, Bucknam had a "limited treatment relationship" with Gloege. R. 713. Bucknam saw Gloege infrequently and their appointments "seemed to be primarily for refilling prescription medication." *Id.* Second, Bucknam's reports came early in his treatment relationship with Gloege, and they were inconsistent with Bucknam's later progress notes, which showed marked improvement.

Regulations in effect when Gloege filed his claim presumed that the opinion of a treating source like Bucknam should generally receive controlling weight. 20 C.F.R. § 404.1527(c)(2). Gloege doesn't challenge the ALJ's decision not to give Bucknam's opinion controlling weight. Instead, he says that the ALJ failed to consider required regulatory factors in determining how much weight to give this opinion. These factors include the length, nature, and extent of the treatment relationship; the frequency of examination; and the opinion's consistency with the record. 20 C.F.R. §§ 404.1527(c)(2)–(6).

The ALJ may not have expressly cited the factors, but his reasoning shows that he considered them. He discussed the nature and extent of Bucknam's treatment relationship with Gloege, which was largely based on refilling Gloege's prescriptions, and he noted that the length of their treatment relationship was minimal (only two visits) before Bucknam wrote his first assessment of Gloege. The ALJ also noted the inconsistency of Bucknam's opinion with Gloege's record in the form of Bucknam's own progress notes.

7

Gloege says that the ALJ committed an error of law by failing to explicitly address the regulatory factors. But the ALJ wasn't required to expressly weigh each factor so long as he considered those that were important to the decision. *See Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) (noting that although "[t]he ALJ did not explicitly weigh every factor while discussing her decision to reject [a treating physician's] reports," she discussed the reports under two of the regulatory factors, which was "enough"); *Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the regulatory factors). The factors the ALJ considered, especially those relating to Bucknam's treatment relationship with Gloege, speak directly to the rationale for the presumption in favor of treating source opinions: Treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)," 20 C.F.R. § 404.1527(c)(2). The ALJ found Bucknam's treatment relationship with Gloege to be too inadequate to support the presumption favoring treating source opinions. So Gloege hasn't shown that the ALJ erred in giving no weight to Bucknam's opinion.

2. **Weber's opinion**

The ALJ gave some weight to the findings of examining physician Kurt Weber, who found that Gloege would "experience marked limitations in the ability to withstand routine work stresses," R. 578. Gloege says that the ALJ erred by giving less weight to the opinion of Weber, an examining source, than to that of Lefevre, a nonexamining source. Regulations in effect when Gloege filed his claim stated that an ALJ should generally give more weight to examining source opinions than to nonexamining source opinions. 20 C.F.R. § 404.1527(c)(1). But they also required the ALJ to weigh all medical opinions, including examining source

opinions, under a set of regulatory factors, one of which is the quality of support the source provides for the opinion. 20 C.F.R. § 404.1527(c)(3).

The ALJ gave a valid reason for questioning Weber's support for his opinion: Weber's opinion was largely based on Gloege's subjective reports, which the ALJ didn't find fully credible. *See Alvarado v. Colvin*, 836 F.3d 744, 748 (7th Cir. 2016) (ALJ may discount medical opinion based on subjective reports that aren't credible). The ALJ exhaustively explained his credibility determination, noting numerous inconsistencies between Gloege's subjective reports and his medical record. For example, he observed that Gloege failed to discuss his work activity, including heavy labor, in his agency hearings. R. 707. He noted the inconsistency between Gloege's testimony that the 15 psychological medications he'd tried were in effective and his more positive statements to his treating physicians. R. 710. And he observed that although Gloege claimed to spend 22 hours per day in bed, his medical records showed no muscle atrophy or wasting. R. 712. Gloege doesn't contest the ALJ's credibility determination, which was a valid reason under the factors for discounting Weber's opinion, so Gloege hasn't shown that the ALJ erred.

Gloege also says that the regulations required the ALJ to address the consistency between Weber's opinion and those of two treating sources, Bucknam and Bert Hodous. But as discussed above, the ALJ provided valid reasons for rejecting Bucknam's opinion. The ALJ also gave valid reasons for rejecting Hodous's opinion. The ALJ determined that Gloege himself had completed Hodous's purported treating source assessment "in large parts." R. 714–15. And he noted that Hodous's assessment was unsupported "by the bulk of Dr. Hodous's treatment notes, which consistently document[ed] relatively normal functioning." R. 715. Gloege doesn't contest the ALJ's analysis of Hodous's assessment.

Because the ALJ gave valid reasons for discounting each of these opinions, there was no need for the ALJ to consider them collectively. Gloege cites no authority to the contrary, so he hasn't shown that the ALJ erred by discounting Weber's opinion.

CONCLUSION

Gloege hasn't shown that the ALJ erred in determining how much weight to give opinions from his treating and examining sources. But the ALJ's RFC and hypothetical question didn't adequately account for the specific mental limitations identified by Lefevre. On remand, the ALJ must either account for these limitations in his RFC and hypothetical question or explain his decision to discount them.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of the Social Security Administration, denying plaintiff Christopher Gloege's application for supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The November 15, 2019 oral argument is CANCELED.

Entered November 14, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge